UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD WOODS and TYRONE HILTON, individually,

Plaintiffs,

v.

FITZCON CONSTRUCTION/REN CORP., FITZCON EXCAVACATION, ESCO HIRF CO INC., RONAN COTTER, <u>individually</u>, CORNELIUS O'SULLIVAN, <u>individually</u>, and MARTIN TEVLIN, <u>individually</u>,

Defendants.

CIVIL ACTION NO.: 20 Civ. 8088 (ALC) (SLC)

<u>**REPORT AND RECOMMENDATION**</u>

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER, JR.**, United States District Judge:

## I.     <u>INTRODUCTION</u>

Plaintiff Edward Woods ("Woods") and Tyrone Hilton ("Hilton," together with Woods, the "Plaintiffs"), filed this action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL"), §§ 190 <u>et seq.</u> and 650 <u>et seq.</u>, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 et seq., New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et seq., and 42 U.S.C. § 1981 ("Section 1981"), against, <u>inter alia</u>, Defendants Esco Hirf Co Inc. ("Esco") and Martin Tevlin ("Tevlin," together with Esco, the "Defaulting Defendants").  (ECF No. 1 ¶¶ 1, 73–93 (the "Complaint")).[1]  Following Defaulting Defendants' failure to appear and defend themselves in this action, Plaintiffs moved for entry of

---

[1] The Complaint also names as Defendants Fitzcon Construction/Ren Corp. ("Ren Corp."), Fitzcon Excavation ("Excavation"), Ronan Cotter ("Cotter"), Cornelius O'Sullivan ("O'Sullivan," together with Ren Corp., Excavation, and Cotter, the "Non-Defaulting Defendants"), who have appeared and defended in this action and are therefore not the subject of this Report and Recommendation.

default judgment.  (ECF No. 55 (the "Motion")).  The District Court referred the Motion to the undersigned for a report and recommendation.  (ECF No. 62).

For the reasons set forth below, I respectfully recommend that:  (i) a default judgment be entered against Defaulting Defendants for violations of the FLSA, NYLL, NYSHRL, NYCHRL, and Section 1981, (see § II.B, supra); and (ii) the calculation of damages against Defaulting Defendants be deferred until the case is resolved as to the Non-Defaulting Defendants.

## II.  BACKGROUND

### A.  Factual Background

The Court summarizes the factual background of Plaintiffs' claims based on the allegations in the Complaint (ECF No. 1), which are accepted as true for purposes of determining liability.  See J&J Sports Prods. Inc. v. Vasquez, No. 19 Civ. 08440 (ALC), 2020 WL 3170588, at *1 (S.D.N.Y. June 15, 2020); see also Analogic Corp. v. Marquis Clearance Servs., Ltd., No. 10 Civ. 3801 (SJ) (ALC), 2011 WL 3919310, at *1 (E.D.N.Y. June 3, 2011), adopted by, 2011 WL 4056295 (E.D.N.Y. Sept. 7, 2011); Okeke v. Aviator Sports & Recreation, Inc., No. 08 Civ. 2343 (ARR) (ALC), 2010 WL 3780383, at *1 (E.D.N.Y. Aug. 31, 2010) ("A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages.").  Where noted, additional facts are drawn from documents Plaintiffs submitted in support of the Motion, including the Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment (ECF No. 56 (the "Memorandum of Law")), the Proposed Findings of Fact and Conclusions of Law (ECF No. 68 (the "Proposed Findings")), the Declarations of Melissa Vo (ECF No. 57 (the "Vo Decl.")) and Shawn Clark (ECF No. 69 (the "Clark Decl.")), and their supporting exhibits (ECF Nos. 56-1;

57-1 – 57-9; 69-1 – 69-9 (the Proposed Findings, the Clark Decl., and its supporting exhibits, the "Default Submission")).

### 1.  Defaulting Defendants

Esco is a construction company organized under New York law.  (ECF No. 1 ¶¶ 14, 29).  At all times relevant to this action, Esco was an employer "within the meaning of the FLSA[,] . . . NYLL and discrimination statutes[,]" in that it:  (1) engaged in "interstate commerce[,]" as Woods "regularly handled goods . . . produced outside the State of New York[,] and (2) "had a gross annual volume of sales of not less than $500,000.00[.]"  (Id. ¶¶ 33–34, 38).

At all relevant times, Tevlin was employed by Esco as a foreman.  (ECF No. 1 at 5 ¶ 27). Tevlin had "supervisory authority" over Plaintiffs, including "the authority to hire, fire, or affect the terms and conditions of Plaintiffs' employment, or to otherwise influence the decisionmaker of the same."  (Id. ¶ 28).

Defaulting Defendants "possesse[d] a substantial control over Plaintiffs' working conditions[,]" including the authority to "determine the rate and method of compensation in exchange for [Plaintiffs'] services[.]"  (Id. ¶¶ 30, 33).  Further, Defaulting Defendants "maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations."  (Id. ¶ 3).

### 2.  Plaintiffs

Both Plaintiffs are African American, Black, male, New York residents, and were formerly employed by Esco and supervised by Tevlin.  (ECF No. 1 ¶¶ 1, 8, 18, 28, 36, 57).  Throughout their employment, Plaintiffs were "not paid at an overtime rate for any of the hours worked over

forty[,]" and Defaulting Defendants did not provide them with "an accurate statement of wages," their respective "rate[s] of pay," or Defaulting Defendants' "regular pay day."  (Id. ¶¶ 43–45, 51–52).

### a. Woods

From April 2018 through March 13, 2020, Woods worked for Defaulting Defendants as a laborer.  (ECF No. 1 ¶ 37).  From April 2018 through October 2018, Woods worked six days a week for 16.5 hours per day (6:30 a.m. until 11:00 p.m.).  (Id. ¶ 39).  From October 2018 through March 13, 2020, Woods worked six days a week for ten and a half hours per day (6:30 a.m. until 5:00 p.m.).  (Id. ¶ 40).  Defaulting Defendants paid Woods, by personal checks, at a rate of $16.00 per hour.  (Id. ¶¶ 41–42).

### b. Hilton

From August 2017 through September 2019, Hilton worked for Defaulting Defendants as a laborer.  (ECF No. 1 ¶ 46).  Throughout his employment, Hilton worked five or six days a week for ten hours per day (7:00 a.m. until 5:00pm).  (Id. ¶ 48).  Defaulting Defendants paid Hilton at a rate of $27.00 per hour.  (Id. ¶ 49).

### 3. Work Environment

Shortly after Plaintiffs started their employment with Defaulting Defendants, Plaintiffs experienced racial harassment from co-workers and supervisors.  (ECF No. 1 ¶ 54).  This harassment included statements by Plaintiffs' supervisor to their co-worker to push "like you're pushing a black man off your wife[,]" (id. ¶ 56), and repeated use of the word "n****r," including by Tevlin.  (Id. ¶¶ 57–61).

Woods reported the "racist work environment to supervisors multiple times to no avail[.]" (Id. ¶ 62).  When Woods complained to Tevlin that a co-worker called him a monkey, Tevlin refused to hear Woods' complaint, and agreed, "you are a monkey."  (Id. ¶¶ 63–64).

**B.  Procedural Background**

On September 30, 2020, Plaintiffs commenced this action by filing a summons and the Complaint against Ren Corp., Excavation, Cotter, O'Sullivan, Esco, and Tevlin (collectively, the Defendants).  (ECF Nos. 1, 3–8).  In the Complaint, Plaintiffs asserted claims under:  (1) FLSA (the "Federal Wage Claim"); (2) NYLL (the "NYLL Claims"); (3) NYSHRL (the "State Discrimination Claim"); (4) NYCHRL (the "City Discrimination Claim"); and (5) Section 1981 (the "Federal Discrimination Claim"), against the Defendants (ECF No. 1 ¶¶ 1, 73–93).  On October 8, 2020, Sue Zouky, a legal clerk, accepted service on behalf of Esco.  (ECF No. 17).  On October 28, 2020, Plaintiffs and Non-Defaulting Defendants filed a proposed stipulation extending their time to respond to the Complaint.  (ECF No. 20 (the "Stipulation")).  On October 29, 2020, the Honorable Andrew L. Carter, Jr. so-ordered the Stipulation.  (ECF No. 21).

On November 13, 2020, the Non-Defaulting Defendants filed their answer.  (ECF No. 23). On November 16, 2020, Judge Carter referred this case to me for general pretrial management. (ECF No. 24).  On November 17, 2020, the Court directed the parties to appear for an initial pretrial conference on Tuesday, January 5, 2021.  (ECF No. 25).  On December 9, 2020, Tevlin accepted service of the Summons and Complaint.  (ECF No. 26).  On January 5, 2021, the Court held an initial case management conference, and scheduled a status conference with the parties on Tuesday, May 18, 2021.  (ECF min. entry Jan. 5, 2021; ECF No. 29 at 5).  Defaulting Defendants did not appear.  (ECF min. entry Jan. 5, 2021).  The parties filed a letter-motion seeking

adjournment of the May 18, 2021 status conference due to a conflict, (see ECF No. 31), and the Court re-scheduled the conference for Monday, June 7, 2021. (ECF No. 32).

On June 7, 2021, the Court held a status conference, at which Defaulting Defendants did not appear, and directed Plaintiffs to request Certificates of Default as to Defaulting Defendants. (ECF No. 33; ECF min. entry June 7, 2021). On June 14, 2021, the Clerk of the Court entered Certificates of Default against Defaulting Defendants. (ECF No. 38–39). On December 8, 2021, the Court directed Plaintiffs to either (i) voluntarily discontinue their claims against Defaulting Defendants or (ii) move for default judgment as to them by January 7, 2022. (ECF No. 48). On January 6, 2022, Plaintiffs filed a letter-motion, with Non-Defaulting Defendants' consent, seeking a two-week extension to file a motion for default judgment. (ECF No. 52). The Court granted the request, and directed Plaintiffs to file the motion for default judgment by January 21, 2022. (ECF No. 53). On January 21, 2022, Plaintiffs filed the Motion, (see ECF No. 55), which Judge Carter referred for a report and recommendation. (ECF No. 62).

On March 15, 2022, the Court directed Defaulting Defendants to file a response to the Motion, if any, no later than April 5, 2022. (ECF No. 63 (the "Scheduling Order")). The Court warned that if Defaulting Defendants failed to respond to Plaintiffs' submission in response to the Scheduling Order or to contact the Court to request an in-court hearing, the Court would issue a report and recommendation based on Plaintiffs' Default Submission alone, without an in-court hearing. (Id.) On April 22, 2022, Plaintiffs filed the Default Submission. (ECF Nos. 68–69). Defaulting Defendants have not responded to Plaintiffs' Default Submission or contacted the Court.

### III.    LEGAL STANDARD

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) (citing Enron, 10 F.3d at 96).  In considering whether to grant a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  Specifically, a "district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice."  S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015). The Court must determine "whether the allegations in a complaint establish the defendants' liability as a matter of law." Id.

## IV.    DISCUSSION

### A.  Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action. Plaintiffs sue under two federal statutes—the FLSA and Section 1981—that give rise to the Court's subject matter jurisdiction under 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiffs' City Discrimination, State Discrimination, and NYLL Claims because they arise out of the same facts and circumstances as their Federal Wage and Discrimination Claims. See Gomez v. City of N.Y., No. 09 Civ. 620, 2012 WL 1514868, at *2 (E.D.N.Y. Apr. 30, 2012); Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020); see also Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011); but cf. Shibetti v. Z Rest., Diner & Lounge, Inc., 478 F. Supp. 3d 403, 411 (E.D.N.Y. 2020) (collecting cases declining to extend supplemental jurisdiction to state law discrimination claims where Plaintiffs brought forth only federal wage claims).

The Court also has personal jurisdiction over Defaulting Defendants. Personal jurisdiction is "a necessary prerequisite to entry of a default judgment." Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (citation omitted), adopted

by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).  The Court has personal jurisdiction over Esco, which conducts business in this District, (ECF No. 68 ¶ 7), as well as Tevlin, who was employed by Esco and supervised Plaintiffs, (id.; see ECF No. 1 ¶ 28), and both were validly served with the Summons and Complaint.  (ECF Nos. 17; 26).

Venue is proper because Esco maintains its principal address and operates its business in this District (ECF No. 68 ¶ 7), see 28 U.S.C. § 1391(b)(1), and because the events or omissions giving rise to Plaintiffs' claims occurred in this District.  (No. 1 ¶ 6).  See 28 U.S.C. § 1391(b)(2).

**B.  Default Judgment**

As noted above, before entering a default judgment, the Court must consider "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013); see Gonzaga Cortez v. Hang Lin, No. 19 Civ. 0905 (LGS), 2019 WL 4256363, at *3 (S.D.N.Y. Sept. 9, 2019) (listing three factors).

Here, each factor supports entry of a default judgment.  First, although willfulness "requires something more than mere negligence, such as egregious or deliberate conduct[,]" Gonzaga, 2019 WL 4256363, at *3 (quoting Guardian Life Ins. Co. of Am. v. Premier Wealth Grp., LLC, No. 12 Civ. 9099 (AJN), 2017 WL 1040425, at *3 (S.D.N.Y. Mar. 16, 2017)), "a clear pattern of willful and deliberate disregard for the litigation" is sufficient.  Bricklayers, 779 F.3d at 187. Defaulting Defendants' failure to respond to the Complaint and the Court's orders is sufficient to "support an inference of willful default."  Guggenheim, 722 F.3d at 455; see J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp., No. 13 Civ. 04299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 9, 2014) (collecting cases where "a defendant's failure to respond to the complaint

is sufficient to demonstrate willfulness"); see also Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,

No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) ("Since Defendants

have been entirely unresponsive, their continued failure is willful.").

Second, "[i]n order to make a sufficient showing of a meritorious defense in connection

with a motion to vacate a default judgment, the defendant need not establish his defense

conclusively, but he must present evidence of facts that, if proven at trial, would constitute a

complete defense." State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 167

(2d Cir. 2004); see Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) ("A defense is

meritorious if it is good at law so as to give the factfinder some determination to make."). Here,

having failed to file an answer, or otherwise participate in the litigation, Defaulting Defendants

cannot establish a meritorious defense. See 1400 Forest Ave, 2014 WL 4467774, at *4.

Third, "[p]rejudice results when delay causes 'the loss of evidence, create[s] increased

difficulties of discovery or provide[s] greater opportunity for fraud and collusion.'" Ward v.

Ramkalawan, No. 11 Civ. 4295 (JS) (ARL), 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013),

adopted by, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013). Accordingly, Plaintiffs would be

prejudiced if default judgment is not entered, "as there are no additional steps available to secure

relief in this Court." Bridge Oil, 2008 WL 5560868, at *2.

Because all three factors have been satisfied, the Court finds that entry of default

judgment is warranted. Because Defaulting Defendants' default equates to a concession of "all

well-pleaded factual allegations of liability in the [C]omplaint," the question becomes whether

Plaintiffs' allegations, accepted as true, establish liability for its claims. 1400 Forest Ave, 2014

WL 4467774, at *5; see Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund,

Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d

230, 234 (2d Cir. 2012) (explaining that "a party's default is deemed to constitute a concession of

all well-pleaded allegations of liability," but not "an admission of damages") (quoting Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); see also City of N.Y.

v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom'

that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in

the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir.

2004)).

### C.  **Defaulting Defendants' Liability**

Plaintiffs' Complaint and Default Submission sufficiently illustrate a sound legal basis for

finding Defaulting Defendants liable for Plaintiffs' Federal Wage and NYLL Claims and the Federal,

State, and City Discrimination Claims.

#### 1.  **FLSA and NYLL**

##### a.  **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  See NYLL § 198(3).  Under the FLSA,

the statute of limitations is two years, or, if the violations were "willful," three years.  See 29

U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988).  A violation

of the FLSA is willful if "the employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited."  McLaughlin, 486 U.S. at 133.  Although plaintiffs may not

recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover

under the statute that provides for the greatest relief.  See Ni v. Bat-Yam Food Servs. Inc., No. 13

Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Woods worked from April 2018 through March 13, 2020, Hilton worked from August 2017 through September 2019, (see ECF No. 1 ¶¶ 37, 46), and they filed the Complaint on September 30, 2020. (ECF No. 1). Thus, Plaintiffs' employment period is entirely within both the NYLL and the FLSA statutes of limitations.

### b. Analysis of Elements

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages. See Tackie v. Keff Enter., Inc., No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014). A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales." Id. at *2 n.2. To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

### i. The Employment Relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts afford the term employer "an expansive definition with 'striking breadth.'" Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019), adopted by, 2019 WL 2544666 (S.D.N.Y. June 20, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)). Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of

the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defaulting Defendants were Plaintiffs' employers for FLSA purposes, the Court must examine the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosp. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3),[2] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent

---

[2] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart, 967 F. Supp. 2d at 924 (internal citation omitted). "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin, 273 F. Supp. 3d at 422.

Plaintiffs allege that Defaulting Defendants were "Plaintiffs' employers within the meaning of the FLSA and NYLL[,]" such that Defaulting Defendants "had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for their services." (ECF No. 1 ¶ 33). By virtue of their default, Defaulting Defendants have admitted their status as Plaintiffs' employers. See Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *11 (S.D.N.Y. Jan. 10, 2022), adopted by, 2022 WL 1751163 (S.D.N.Y. May 31, 2022); Rovio Entm't, 97 F. Supp. 3d at 545. Because Defaulting Defendants were Plaintiffs' employers, they are jointly and severally liable under the FLSA and NYLL for any damages award. See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL);[3] see also Barfield, 537 F.3d at 144; Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 140 (2d Cir. 1999).

---

[3] The Court notes that, even when an employment relationship meets the FLSA's and NYLL's definitions, "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement[,]" Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) ("Chen I"), aff'd sub nom. Chen v. Major

ii.    **Interstate Commerce**

Under the FLSA, Plaintiffs must establish that they or their employer (1) "engaged in commerce or the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce."  Newman v. W. Bar & Lounge, Inc., No. 20 Civ. 1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021); see Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (stating that employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed").

Plaintiffs have plausibly alleged that Defaulting Defendants engaged in interstate commerce.  Plaintiffs alleged that "Defendants and their enterprise used items in interstate commerce[,]" such that "numerous items that were used daily at the construction site, such as construction equipment, were produced outside the state of New York[,]" and "had a gross annual volume of sales of not less than $500,000.00 at all relevant times."  (ECF No. 1 ¶¶ 34–35). Plaintiffs also alleged that, throughout their tenure as employees of Defaulting Defendants, they "handled goods in interstate commerce, such as construction materials produced outside the

---

League Baseball Properties, Inc., 798 F.3d 72 (2d Cir. 2015) ("Chen II"), including for "any employee employed in a bona fide executive, administrative or professional capacity[.]"  29 U.S.C. § 213(a)(1).  The NYLL contains similar exemptions.  See NYLL § 651(5)(b).  "These exemptions are affirmative defenses, for which employers have the burden of proof."  Chen I, 6 F. Supp. 3d at 454.  "A plaintiff is not required to plead the absence of such a defense." Chen II, 798 F.3d at 81.  "As Defendants have failed to appear in this action, the affirmative defense of exemption has not been raised." Reyes v. Art Tek Design, Ltd., No. 16 Civ. 5168 (ADS) (AYS), 2018 WL 614980, at *4 (E.D.N.Y. Jan. 11, 2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018).  "Accordingly, the Court finds no basis for finding [Plaintiffs'] employment with [Defaulting Defendants] to be exempt from the FLSA's [or NYLL's] provisions." Id.

State of New York." (Id. ¶¶ 38, 47).  Because Plaintiffs' allegations meet the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), Plaintiffs have satisfied the interstate commerce element for FLSA liability.  See Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) ("[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce.") (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

### iii.   Unpaid Overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. To state an overtime claim, a plaintiff "must allege only that []he worked compensable overtime in a workweek longer than forty hours, and that []he was not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3; see Lundy, 711 F.3d at 114 ("We conclude that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.").

Woods worked, from April 2018 to October 2018, Monday to Saturday from 6:30 a.m. to 11:00 p.m., totaling "approximately 90 hours per week[.]"  (ECF No. 1 ¶ 39).  From October 2018 through March 13, 2020, Woods worked six days a week from 6:30 a.m. to 5:00 p.m., totaling "approximately 63 hours per week[.]"  (Id. ¶ 40).

Hilton worked, from August 2017 to September 2019, five to six days a week from 7:00 a.m. to 5:00 p.m., totaling "approximately 50 to 60 hours per week[.]"  (ECF No. 1 ¶ 48).  Both Plaintiffs alleged they were "not paid at an overtime rate for any of the hours worked over forty as required by federal and state law."  (Id. ¶¶ 43, 50).  Thus, Plaintiffs have adequately stated a

claim against Defaulting Defendants for unpaid overtime wages under the FLSA and the NYLL. See Agureyev v. H.K. Second Ave. Rest., Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (holding that plaintiff stated claim for overtime wages); Mondragon, 2019 WL 2551536, at *9 (same).

### iv.    Statutory Wage Notices and Statements

"The [WTPA], which became effective April 9, 2011, required [Defaulting Defendants] to provide [Plaintiffs], at the time of hiring, with a notice containing, inter alia, the rate and frequency of [his] pay, NYLL § 195(1), and to furnish [them] with a written statement with each payment of wages, listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked."  Mondragon, 2019 WL 2551536, at *12 (citing NYLL § 195(3)).

Plaintiffs alleged that Defaulting Defendants "never provided Plaintiffs with a wage notice at the start of their employment or annually, or a wage statement with each payment of wages as required by NYLL §§ 195(1) and 195(3)[,]" such that they are entitled to statutory damages. (ECF Nos. 1 ¶¶ 45, 52; 56 at 20; 68 ¶ 36).  Accordingly, Plaintiffs are entitled to recover statutory damages under §§ 195(1) and 195(3).  See Suriel, 2022 WL 1750232, at *14; see also Bustillo v. K&J Constr. Consultant Serv., Inc., No. 20 Civ. 478 (RPK) (CLP), 2022 WL 2467204, at *5 (E.D.N.Y. Feb. 25, 2022).

Accordingly, because each of the elements are met, Defaulting Defendants are liable for the Federal Wage and NYLL Claims.

### 2. **Section 1981, NYSHRL, and NYCHRL**

#### a. **Statute of Limitations**

"The statute of limitations governing . . . Section 1981 claims is four years." Whitley v. Montefiore Med. Grp., No. 13 Civ. 4126 (LTS), 2016 WL 1267788, at *7 (S.D.N.Y. Mar. 30, 2016) (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004)). Further, "the statute of limitations under the NYSHRL and the NYCHRL is three years." Sotomayor v. City of N.Y., 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013) (citations omitted); see Donzo v. City of N.Y., No. 21 Civ. 00629 (LGS), 2021 WL 5507027, at *3 (S.D.N.Y. Nov. 23, 2021) ("The NYSHRL and NYCHRL also have a three-year statute of limitations."). "It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000). An exception to the statute of limitations may revive claims for conduct occurring outside the limitations period. See Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011).

Plaintiffs commenced this action on September 30, 2020, and thus, their State and City Discrimination Claims based on conduct that occurred before September 30, 2017, are time-barred, unless they can successfully invoke an exception to the limitations period. Plaintiffs' Federal Discrimination claims are barred, to the extent they were based on conduct occurring before September 30, 2016, but because no relevant conduct occurred before September 30, 2016, by virtue of Plaintiffs not having yet been employed by Defendants, Plaintiffs' employment period is entirely within the Federal Discrimination Claim's limitations period.

Based on their allegations of hostile work environment from April 2018 through March 30, 2020, Woods' State and City Discrimination Claims fall entirely within the limitations period. (ECF No. 1 ¶ 37).  Hilton, however, alleges hostile work environment from August 2017 through September 2019.  (Id. ¶ 48).  Without an applicable exception, any conduct that occurred during Hilton's first two months of employment with the Defendants would be barred.

The Court thus considers whether Hilton may invoke an exception to the statute of limitations.  Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)) (internal quotation marks and alterations omitted).   The doctrine extends to hostile work environment claims, because:

> [h]ostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the "unlawful employment practice," § 2000e–5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002).  Nevertheless, "to bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).  Because Hilton has shown a continuing hostile work environment, (see § IV.C.2.b, supra), the continuing violation doctrine applies here, such that he may base his claim on conduct from the beginning of his employment in August 2017.  See Gerald v. DCV Holdings, Inc., No. 17 Civ. 6525 (EK) (RLM), 2021 WL 2809915,

at *4 (E.D.N.Y. July 6, 2021); <u>see also</u> <u>Taylor v. City of N.Y.</u>, 207 F. Supp. 3d 293, 302 (S.D.N.Y.

2016); <u>Bermudez</u>, 783 F. Supp. 2d at 574 ("The standard for applying the continuing-violation

doctrine to claims under the NYCHRL and the NYSHRL is also governed by <u>Morgan</u>."); <u>Bartman v.</u>

<u>Shenker</u>, 5 Misc. 3d 856, 863 (1st Dep't 2004).

**b.  Analysis of Elements**

Plaintiffs allege that Defaulting Defendants discriminated against them in violation of

Section 1981.  (ECF No. 1 ¶¶ 1, 73–74).  Specifically, Plaintiffs contend they "were treated

differently by Defendants solely due to their race[,]" and "Defendants' actions and conduct . . .

intended to harm Plaintiffs."  (<u>Id.</u> ¶¶ 65–66).  Consequently, "Plaintiffs were unlawfully

discriminated against, retaliated against, humiliated, degraded and belittled, and as a result,

suffers the loss of rights, emotional distress, loss of income, and earnings."  (<u>Id.</u> ¶ 70).

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of persons
> and property as is enjoyed by white citizens, and shall be subject to
> like punishment, pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.

42 U.S.C. § 1981(a).  Therefore, Section 1981 "outlaws discrimination with respect to the

enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as

employment[.]"  <u>Patterson</u>, 375 F.3d at 224; <u>see</u> <u>Willett v. Metro. Transp. Auth.</u>, No. 07 Civ. 3561

(DAB), 2012 WL 2952548, at *13 (S.D.N.Y. July 16, 2012).

Because Plaintiffs do not specify under which substantive theory they are pursuing a

Section 1981 claim, the Court interprets Plaintiffs to be asserting a hostile work environment

claim.  See Sosa v. N.Y. City Dep't of Educ., 368 F. Supp. 3d 489, 497 (E.D.N.Y. 2019); Bowen-Hooks

v. City of N.Y., 13 F. Supp. 3d 179, 237 n.34 (E.D.N.Y. 2014); see also Turner v. Nat'l R.R. Passenger

Corp., 181 F. Supp. 2d 122, 131 (N.D.N.Y. 2002) ("Section 1981 provides a cause of action for race-

based employment discrimination based on a hostile work environment.") (citing Lopez v. S.B.

Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987).  "An employee has the right to 'work in an

environment free from discriminatory intimidation, ridicule, and insult.'"  Turner, 181 F. Supp. 2d

at 131 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).

To establish a hostile work environment claim under Section 1981, a plaintiff must satisfy

two prongs.  See Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  First, the plaintiff must

demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment[,]" Littlejohn v. City of N.Y., 795 F.3d 297, 320–21

(2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "This standard has both

objective and subjective components: the conduct complained of must be severe or pervasive

enough that a reasonable person would find it hostile or abusive, and the victim must subjectively

perceive the work environment to be abusive."  Rasprado v. Carlone, 770 F.3d 97, 114 (2d Cir.

2014) (citing Harris, 510 U.S. at 21–22).  "Courts must look at the totality of the circumstances to

determine whether an environment is 'hostile' or 'abusive' and should consider the following

nonexclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether

it unreasonably interferes with an employee's 'work performance.'"  Bermudez, 783 F. Supp. 2d

at 578 (quoting Harris, 510 U.S. at 23); see Littlejohn, 795 F.3d 297, 321 (2d Cir. 2015) ("In

determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'") (quoting Harris, 510 U.S. at 23). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." Fouche v. St. Charles Hosp., 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) (quoting Haggood v. Rubin & Rothman, LLC, No. 14 Civ. 34L (SJF) (AKT), 2014 WL 6473527, at *7 (E.D.N.Y. Nov. 17, 2014).

"Second, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). Whether hostility may be imputed to an employer depends on whether the purported wrongdoer is a "supervisor" or "coworker":

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

Lamarr-Arruz v. CVS Pharmacy, Inc., 271 F. Supp. 3d 646, 659 (S.D.N.Y. 2017) (quoting Vance v. Ball State Univ., 570 U.S. 421, 424 (2013)); see Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000) ("An employer will be liable in negligence for a racially hostile work environment created by a victim's co-workers if the employer knows about (or reasonably should

know about) that harassment but fails to take appropriately remedial action.") (internal quotation marks and alterations omitted). "[O]nce an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it." Snell v. Suffolk Cnty., 782 F.2d 1094, 1104 (2d Cir. 1986).

### i.    **Hostile Work Environment**

Here, undisputed facts support a finding that Defaulting Defendants maintained a hostile work environment. With respect to the first factor, frequency of the discriminatory conduct, Plaintiffs allege that soon after beginning their employment with Defaulting Defendants, their "work environment became permeated with racist harassment from co-workers and supervisors," such that, for example, "[m]ultiple co-workers echoed . . . racist comments and repeatedly referred to Plaintiffs as 'n****s.'" (ECF No. 1 at ¶¶ 54, 60). This is sufficient for purposes of a hostile work environment claim. See Kemp v. CSX Transp., Inc., 993 F. Supp. 2d 197, 212 (N.D.N.Y. 2014) (finding sufficient admissible evidence of hostile work environment where, "Plaintiffs allege that they were subjected to vulgar racial language throughout their employment . . ."). The second factor, severity, also supports Plaintiffs claim. Plaintiffs allege that they were subjected to vulgar racist language throughout their employment, and that despite "complain[ing] about this work environment to supervisors multiple times[,]" supervisors "continued using racist language towards and around the Plaintiffs." (ECF No. 1 at ¶¶ 54, 60). The Second Circuit has emphasized that, "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n****r' by a supervisor in the presence of his subordinates." Trail v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 17 Civ. 7273 (VB), 2020

WL 5504277, at *10 (S.D.N.Y. Sept. 10, 2020) (quoting <u>Rivera v. Rochester Genesee Reg'l Transp.</u> <u>Auth.</u>, 743 F.3d 11, 24 (2d Cir. 2014)).  Here, supervisors repeatedly invoked that term towards and around Plaintiffs, and therefore, the second factor favors liability.

The third factor, physical threat or humiliation, also exists, as Defaulting Defendants' conduct made "Plaintiffs feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed."  (ECF No. 1 at ¶ 71).  Likewise, the final factor, unreasonable interference, is satisfied, as Plaintiffs allege they "were unlawfully discriminated against, retaliated against, humiliated, degraded and belittled, and as a result, suffer[ed] the loss of rights, emotional distress, loss of income, and earnings."  (<u>Id.</u> at ¶ 70).  Accordingly, Plaintiffs have established each of the three elements of the first prong.

**ii.    <u>Imputation</u>**

As for the second prong, Defaulting Defendants failed to fulfill their "duty to take reasonable steps to eliminate" a hostile work environment.  <u>Snell</u>, 782 F.2d at 1104; <u>Oliver v.</u> <u>Univ. of Connecticut Health Care</u>, 292 F. Supp. 2d 398, 409 (D. Conn. 2003) ("An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it.").  Plaintiffs experienced harassment from both co-workers and supervisors.  (ECF No. 1 at ¶¶ 55–72).  Despite Plaintiffs' numerous pleas that their supervisors stop invoking vulgar racial slurs and offensive comments, supervisors repeated their comments or affirmed the comments of others.  (<u>Id.</u>)  Because "employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor[,]" <u>Oliver</u>, 292 F. Supp. 2d 398, 409 (D. Conn. 2003), Plaintiffs' allegations establish a basis to impute the underlying misconduct to Defaulting Defendants.

Accordingly, because Plaintiffs have satisfied both prongs of a Federal Discrimination Claim for a hostile work environment, the Court finds that there is an adequate basis to hold Defaulting Defendants liable.

### c. NYSHRL and NYCHRL

Because the NYSHRL is "analyzed under the same framework as governs . . . [Section] 1981 claims[,]" Lumhoo v. Home Depot USA, Inc., 229 F. Supp. 2d 121, 136 (E.D.N.Y. 2002), and the NYCHRL "is less exacting than the federal statutes[,]" Francis v. Ideal Masonry, Inc., No. 16 Civ. 2839 (NGG) (PK), 2018 WL 4292171, at *4 (E.D.N.Y. Aug. 3, 2018), adopted by, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018), if Plaintiffs meet the requisite elements of their claims under Section 1981, the standards under NYCHRL and NYSHRL are met. Id.; see Pearson v. Unification Theological Seminary, 785 F. Supp. 2d 141, 153 (S.D.N.Y. 2011) ("Section 1981 claims, as well as claims under the SHRL and CHRL, are analyzed as are Title VII claims."); see also Bermudez, 783 F. Supp. 2d at 586 ("Employment discrimination claims (whether because of race, gender or religion) under the NYSHRL are treated the same as employment discrimination claims under Section 1983 and Section 1981."); Nieblas-Love v. N.Y. City Hous. Auth., 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) ("A plaintiff's burden under the NYCHRL is somewhat lower: he or she need only put forward evidence of 'unequal treatment based upon membership in a protected class.'"). Accordingly, Plaintiffs have also established a basis to hold Defaulting Defendants liable under the NYCHRL and NYSHRL.

### D. Calculating Damages

In instances where, "some but not all defendants have defaulted, the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the

amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments." Montcalm Pub. Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992) (quoting Friedman v. Lawrence, No. 90 Civ. 5584 (VLB), 1991 WL 206308, at *3 (S.D.N.Y. Oct. 2, 1991)); see Ainbinder v. Money Ctr. Fin. Grp., Inc., No. 10 Civ. 5270 (SJF) (AKT), 2013 WL 1335997, at *13 (E.D.N.Y. Feb. 28, 2013), adopted by, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013). Where a court grants a default judgment as to liability but reserves judgment as to damages, "the proper procedure is to consolidate the inquest to determine the level of damages as to the Defaulting Defendants with the damages aspect of the trial against the non-defaulting defendants[.]" Montcalm, 807 F. Supp. at 978. Defaulting Defendants are precluded from participating in the trial, "as their default judgments stand as admissions of liability." Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., 505 F. Supp. 3d 137, 161 (N.D.N.Y. 2020) (quoting Montcalm, 807 F. Supp. at 978).

Due to the possibility that Defaulting Defendants and the Non-Defaulting Defendants may be held jointly and severally liable for the same damages, the Court respectfully recommends that a calculation of damages against Defaulting Defendants be deferred until the case is resolved as to the Non-Defaulting Defendants.

## V.    CONCLUSION

For the reasons set forth above, I respectfully recommend that: (i) a default judgment be entered against Defaulting Defendants for violations of the Federal Wage and NYLL Claims and the Federal, State, and City Discrimination Claims; and (ii) the calculation of damages against Defaulting Defendants be deferred until the case is resolved as to the Non-Defaulting Defendants.

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defaulting

Defendants within seven (7) business days and file proof of service on the docket.

Dated:      New York, New York
            August 3, 2022

SARAH L. CAVE
United States Magistrate Judge

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Schofield.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).