UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD WOODS and TYRONE HILTON,

          Plaintiffs,

-v-

FITZCON CONSTRUCTION/REN CORP., FITZCON EXCAVATION, ESCO HIRF CO. INC. RONAN COTTER, CORNELIUS O'SULLIVAN, and MARTIN TEVLIN,

          Defendants.

CIVIL ACTION NO.: 20 Civ. 8088 (ALC) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER, JR.**, United States District Judge:

## I. INTRODUCTION

Plaintiff Edward Woods ("Woods") and Tyrone Hilton ("Hilton," with Woods, "Plaintiffs"), filed this action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL"), §§ 190 et seq. and 650 et seq., New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 et seq., New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et seq., and 42 U.S.C. § 1981 ("Section 1981"), against Defendants Fitzcon Construction/Ren Corp. ("Ren Corp."), Fitzcon Excavation ("Excavation"), Ronan Cotter ("Cotter"), Cornelius O'Sullivan ("O'Sullivan," with Ren Corp., Excavation, and Cotter, the "Non-Defaulting Defendants"), and Esco Hirf Co Inc. ("Esco") and Martin Tevlin ("Tevlin," with Esco, the "Defaulting Defendants"). (ECF No. 1 ¶¶ 1, 73–93 (the "Complaint")). After Plaintiffs and the Non-Defaulting Defendants reached a settlement (the "Settlement"), the parties submitted an application for approval of the settlement under Cheeks v. Freeport Pancake House, Inc., 796

F.3d 199 (2d Cir. 2015), which the Honorable Andrew L. Carter, Jr. referred for a report and recommendation. (ECF Nos. 78 (the "Cheeks Submission"); 80).

Having reviewed the Cheeks Submission, for the reasons set forth below, I respectfully recommend that the Settlement be approved as fair and reasonable.

## II. BACKGROUND

### A. Factual Background

The factual background of Plaintiffs' claims is set forth in the Report and Recommendation dated August 3, 2022, recommending that Plaintiffs' motion for a default judgment against the Defaulting Defendants be granted, which Judge Carter subsequently adopted. Woods v. Fitzcon Constr./Ren Corp., No. 20 Civ. 8088 (ALC) (SLC), 2022 WL 3868115 (S.D.N.Y. Aug. 3, 2022) ("Woods I"), adopted by, 2022 WL 3908007 (S.D.N.Y. Aug. 30, 2022) ("Woods II"). That background is incorporated by reference. See Woods I, 2022 WL 3868115, at *1–2.

### B. Procedural Background

On September 30, 2020, Plaintiffs commenced this action by filing a summons and the Complaint against Ren Corp., Excavation, Cotter, O'Sullivan, Esco, and Tevlin (collectively, "Defendants"). (ECF Nos. 1, 3–8). In the Complaint, Plaintiffs asserted claims under: (1) FLSA (the "Federal Wage Claim"); (2) NYLL (the "NYLL Claims"); (3) NYSHRL (the "State Discrimination Claim"); (4) NYCHRL (the "City Discrimination Claim"); and (5) Section 1981 (the "Federal Discrimination Claim"), against the Defendants (ECF No. 1 ¶¶ 1, 73–93). On November 13, 2020, the Non-Defaulting Defendants filed their answer. (ECF No. 23). The Court subsequently entered a default judgment on liability against Defaulting Defendants, and deferred a calculation of

damages as to them until the remainder of the case was resolved.  See Woods II, 2022 WL 3908007, at *1; Woods I, 2022 WL 3868115, at *12–13.

On September 15, 2021, I conducted a settlement conference in which Plaintiffs and the Non-Defaulting Defendants participated, but did not reach an agreement.  (ECF min. entry Sept. 15, 2021).  On March 11, 2022, at the parties' request, I held a second settlement conference between Plaintiffs and Non-Defaulting Defendants, who did not reach agreement but continued their negotiations.  (ECF min. entry Mar. 11, 2022).  On May 6, 2022, Plaintiffs and the Non-Defaulting Defendants advised that they had reached an agreement in principle to settle their disputes.  (ECF No. 73).[1]

On August 31, 2022, Plaintiffs and the Non-Defaulting Defendants filed the Cheeks Submission, which includes a copy of their settlement agreement (the "Agreement"), Plaintiffs' damages calculation (the "Damages Calculation"), and documentation of Plaintiffs' attorneys' fees and costs.  (ECF Nos. 78 – 78-4).  Judge Carter subsequently referred the Cheeks Submission for a report and recommendation.  (ECF No. 80).

Following an initial review of the Cheeks Submission, on November 2, 2022, the Court held a conference with counsel for Plaintiffs and the Non-Defaulting Defendants to discuss the terms of the Agreement.  (ECF Nos. 81; 83 84; ECF min entry Nov. 2, 2022).

---

[1] The Cheeks Submission indicates that the parties engaged in a private mediation with JAMS before Plaintiffs filed this action.  (ECF Nos. 78-3 at 1; 78-4 at 6).

### III. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 41(a)(1)(A), parties may voluntarily dismiss an action in federal court, subject to the limitations imposed by "any applicable federal statute[.]" Fed. R. Civ. P. 41(a)(1)(A); see Amhaz v. Booking.com (USA) Inc., No. 17 Civ. 2120 (GBD) (OTW), 2019 WL 9122944, at *2 (S.D.N.Y. Oct. 29, 2019), adopted by, 2020 WL 3498264 (S.D.N.Y. June 29, 2020). The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," the statute falls within Rule 41(a)(1)(A), and therefore, "stipulated dismissals settling FLSA claims with prejudice require approval of the district court or the [Department of Labor] to take effect." Cheeks, 796 F.3d at 206.

Under precedent in this District, courts approve FLSA settlements where they are "fair and reasonable," an inquiry that "employ[s] the five non-exhaustive factors enumerated in Wolinsky v. Scholastic Inc.[,]" 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Amhaz, 2019 WL 9122944, at *2. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky, 900 F. Supp. 2d at 335 (citations omitted).

B. Application

    1. Range of Recovery, Burdens, and Litigation Risks

The first three Wolinsky factors are interrelated and can be considered together. See, e.g., Flores v. Dynamic Wireless NYC, LLC, No. 21 Civ. 6160 (OTW), 2022 WL 3363584, at *2

4

(S.D.N.Y. July 1, 2022); Amhaz, 2019 WL 9122944, at *2.  Under the Agreement, the total amount the Non-Defaulting Defendants are to pay, over the course of ten months, is $75,000.00 (the "Settlement Amount").  (ECF No. 78-1 at 1).  Each Plaintiff will receive, by the end of ten months after Court approval, a total of $22,395.20 (10*$2,239.52) attributable to "alleged emotional distress, liquidated damages, statutory penalties and alleged unpaid independent contractor fees[.]"  (Id. at 1–2).  In the Damages Calculation, Plaintiffs estimated that, were they successful on their FLSA and NYLL Claims alone, Woods would have been entitled to an award of $49,264.00, and Hilton would have been entitled to an award of $45,765.00.  (ECF No. 78-2 at 1).  Woods' recovery under the Agreement therefore represents 45.4% of his estimated FLSA and NYLL damages, and Hilton's represents 48.9%.  In addition, both Plaintiffs sought emotional distress damages for their Federal, State, and City Discrimination Claims.  (ECF Nos. 1 at 13; 78 at 2).

The recovery that Plaintiffs will receive under the Agreement, relative to their Damages Calculation, is equal to or greater than what other courts in this District have deemed fair and reasonable.  See, e.g., Flores, 2022 WL 3363584, at *2 (approving settlement that resulted in plaintiff's receipt of "nearly 50% of her best-case" damages estimate, "not including any liquidated damages or penalties"); Amhaz, 2019 WL 9122944, at *2 (approving settlement percentages between 9.4% and 26% of plaintiffs' estimated total recoveries); Beckert v. Ronirubinov, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving settlement that resulted in plaintiffs' receipt of 25% of estimated damages).

Plaintiffs also acknowledge that, were litigation to go forward, "there were sharply contested factual and legal disputes that went to the heart of Plaintiffs' claims[,]" including Plaintiffs' hours worked and whether they worked for the Non-Defaulting Defendants at all.  (ECF

5

No. 78 at 2–3; see ECF No. 23 at 15 (asserting affirmative defenses that Non-Defaulting Defendants did not employ Plaintiffs)). With these defenses, there is a not insignificant possibility that Plaintiffs could have received nothing, or substantially less than they allege, at trial on their FLSA and NYLL claims.

In addition, Plaintiffs have expressed concern about the Non-Defaulting Defendants' "limited ability to pay a settlement in light of the financial situation of the construction industry and the closing of the corporate entities," as well as their ability to collect on any judgment they might obtain against the Non-Defaulting Defendants at trial, hence the inclusion of a payment schedule in the Agreement. (ECF No. 78 at 3). See Flores, 2022 WL 3363584, at *2 (finding that defendants' assertions of inability to pay, combined with "long payment plan" supported approval of settlement); Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (noting that collectability concerns, manifest in a payment schedule, "militate[d] in favor of finding a settlement reasonable"); see also Hart v. RCI Hosp. Holdings, Inc., No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (finding that significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement). As security for the payment schedule, the Non-Defaulting Defendants have provided affidavits of confession of judgment (the "Affidavits"), facilitating Plaintiffs' recovery in the event of default. (ECF No. 78-1 at 11–25). See Kim v. Choi, No. 19Civ. 9811 (OTW), 2021 WL 1759830, at *1 (S.D.N.Y. May 4, 2021) (noting that confessions of judgment provided non-monetary benefits supporting conclusion that settlement was fair and reasonable); Deran v. Antalia Turkish Cuisine LLC, No. 19Civ. 6833 (BCM), 2020 WL 3414890, at *2 (S.D.N.Y. June 22,

2020) (approving settlement where installment payments were backed by confessions of judgment).[2]

Finally, the Court notes that, as part of the Settlement, Plaintiffs are agreeing to forego further efforts to pursue their claims against the Defaulting Defendants, and, provided the Settlement is approved, will stipulate to dismissal of those claims. (ECF No. 84-1 at 4–6). That Plaintiffs would do so was a material term on which the Non-Defaulting Defendants' willingness to pay was contingent. (Id. at 6). Plaintiffs' choice is reasonable, given the slim likelihood of any recovery against Defaulting Defendants. (Id.)

Plaintiffs' substantial recovery as part of the Settlement, combined with the risks they faced in the litigation and concerns about collectability of a judgment support the finding that the Settlement is fair and reasonable.

### 2. Arm's-Length Negotiations

The Settlement is the result of lengthy negotiations between the parties over the course of two years, including a mediation as well as two settlement conferences with the Court. The Settlement was therefore the result of arm's-length negotiations. See Flores, 2022 WL 3363584, at *2 (finding that settlement resulting from court-appointed mediation evidenced arm's-length negotiations); Amhaz, 2019 WL 9122944, at *3 (finding that settlement resulting from private mediation demonstrated arm's-length negotiations).

---

[2] The Affidavits do not contain any potentially objectionable penalty. Cf. Deran, 2020 WL 3414890, at *2 (noting that "any potential unfairness to defendants inherent in the affidavit of confession of judgment is not a barrier to judicial approval of [an] Agreement under Cheeks and its progeny").

7

3. **Risk of Fraud or Collusion**

There is nothing in the record indicating that fraud or collusion played a role in the Settlement.  See Flores, 2022 WL 3363584, at *2; Amhaz, 2019 WL 9122944, at *3.  In addition, neither Plaintiff worked for the Non-Defaulting Defendants when they filed the Complaint, (ECF No. 1 ¶ 36), "diminishing potential concern that [either] of the Plaintiffs may have been coerced into the [S]ettlement by their employer."  Amhaz, 2019 WL 9122944, at *3.

4. **Settlement Agreement Provisions**

The Agreement does not contain provisions that courts have found objectionable and thus prevented approval of other proposed FLSA settlements.  For example, the Agreement does not contain a confidentiality provision and has been filed on the docket.  See Amhaz, 2019 WL 9122944, at *3; Thallapaka v. Sheridan Hotel Assocs. LLC, No. 15 Civ. 1321 (WHP), 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (noting that an "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements).  Nor does it contain a non-disparagement clause.  See Amhaz, 2019 WL 9122944, at *3; Martinez v. Gulluoglu LLC, No. 15Civ. 2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (noting that non-disparagement provisions can contravene the purpose of FLSA).  Finally, the release in the Agreement is limited to employment-related claims that have been or could have been asserted in the Complaint.  (ECF No. 78-1 at 3–4).  The absence of objectionable provisions supports the finding that the Settlement is fair and reasonable.

5. **Attorneys' Fees and Costs**

The Agreement allocates $30,209.60 to Plaintiffs' counsel for attorneys' fees and costs. (ECF Nos. 78 at 3; 78-1 at 2 ¶ 2(a)(i)(c)).  The costs total $8,418.70, consisting of the private

mediation fee, transcripts, postage, and service of process. (ECF Nos. 78 at 3; 78-3). Thus, the proposed amount of attorneys' fees, $21,790.90, represents 29% of the Settlement Amount. (ECF No. 78 at 3). Plaintiffs represent that their lodestar amount is $64,605.00, and that their retainer agreements with their counsel provided for a 40% retainer. (ECF No. 78 at 3). According to the contemporaneous billing records in the Cheeks Submission, Shawn Clark, a senior associate with an hourly rate of $350, and one paralegal with an hourly rate of $100, worked on Plaintiffs' matter. (ECF Nos. 78 at 4; 78-4).

"Where, as here, the proposed attorney's fees award is based on an amount other than the charged fees, the Court must still employ the lodestar method to determine reasonableness." Amhaz, 2019 WL 9122944, at *3 (citing Hernandez v. Boucherie LLC, No. 18 Civ. 7887 (VEC), 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019)). "The lodestar method compares the proposed fees with the lodestar amount, [which is] a reasonable hourly rate multiplied by the reasonable number hours needed to be spent on the case." Id.

"In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour." Burns v. Scott, No. 20Civ. 10518 (JGK) (SLC), 2022 WL 10118491, at *14 (S.D.N.Y. Oct. 17, 2022) (reducing experienced associate's hourly rate from $375 to $300); see Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting hourly rates between $250 and $450 for experienced litigators in wage-and-hour cases in this district). Clark is a 2010 graduate of New York University School of Law who has nearly eight years of experience "litigating employment matters on behalf of plaintiffs in state and federal courts, including wage & hour and discrimination actions." (ECF No. 78 at 4). While Clark's hourly rate of $350 is at the higher end of what courts in this district have approved for

experienced wage-and-hour associates, the Court will not reduce his hourly rate for purposes of the lodestar analysis. See Victor v. Sam's Deli Grocery Corp., No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *15 (S.D.N.Y. Aug. 25, 2022) (finding $350 reasonable hourly rate for associate with over seven years of wage-and-hour experience). The hourly rate of $100 for the paralegal is also reasonable. See id. (finding $100 reasonable hourly rate for wage-and-hour paralegal).

Clark recorded 173.40 hours to Plaintiffs' matter, while the paralegal recorded 39.15, resulting in a lodestar amount of $64,605.00 (173.4*$350 + $100*39.15). (ECF No. 78-4). The amount of fees under the Agreement, therefore, amounts to approximately one-third of the lodestar amount ($21,790.90/$64,605.00). In addition, as noted above, the attorneys' fees Plaintiffs' counsel is to receive under the Agreement amounts to less than one-third of the Settlement Amount, a percentage that courts in this district have generally deemed reasonable. See Amhaz, 2019 WL 9122944, at *4 (finding that fees representing 32% of the net settlement amount was reasonable): Martinez, 2016 WL 206474, at *2 ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action.").

In addition, I recommend finding that Plaintiffs' costs, which are substantiated by contemporaneous receipts (ECF No. 78-3), reflect the "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); see Perez v. Rossy's Bakery & Coffee Shop, Inc., No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *11 (S.D.N.Y. Mar. 30, 2021) (awarding costs for transcripts, service, translator, and filing fee); see also Antonio v. SipSak Inc., No. 21 Civ. 1871 (LGS) (SLC), 2022 WL 4796956, at *15 (S.D.N.Y. July 28, 2022), adopted by, 2022 WL 4787739 (S.D.N.Y. Oct. 3, 2022);

Amhaz, 2019 WL 9122944, at *4 (finding costs reasonable after plaintiffs' counsel supplemented submission with declaration attesting to costs).

Accordingly, the attorneys' fees and costs under the Agreement are reasonable.

### IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that the Settlement be approved as fair and reasonable.

Plaintiffs shall promptly serve a copy of this Report and Recommendation on the Defaulting Defendants, and file proof of service on the docket.

Dated:   New York, New York
         November 14, 2022

_____
SARAH L. CAVE
United States Magistrate Judge

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Carter.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).